This is our first case of the morning. People of the state of Illinois v. Jackson v. Bell. We have the appellant, Mr. Whitrick, and the appellee, Mr. McNeil. You may proceed. Your Honor, may I please report? Counsel, my name is Edward Whitrick. I'm with the Office of the State Appellate Counsel. I represent the appellant, Mr. Bell, on this appeal. Unless the court desires otherwise, I will address the first three points raised in the party's briefing, and I will address them in order. We are here today because the state charged Mr. Bell with the attempted escape from the Pontiac Correctional Center. The thing is, Your Honor, Mr. Bell never voluntarily left his cell, much less tried to leave the Pontiac Correctional Center. Under the attempt statute as charged here, the state was required to prove beyond a reasonable doubt that Mr. Bell both had the specific intent to escape, and with that intent, he committed acts that constituted substantial steps towards the commission of escaping the Pontiac Correctional Center. Can an accused abandon an attempt like an accused can abandon a conspiracy? Is there such a parallel? In this context, Mr. Bell is arguing that he abandoned any attempts to escape before a substantial step was made. So you think that his plan to deceive the officers, his construction of the dummy, and his acquisition or creation of a map to lead him to where he would need to go if he was successful, those aren't substantial steps? No, Your Honor, those are just acts that are mere preparation for a future escape attempt that never manifested. How didn't it manifest? Mr. Bell's conduct within his cell was merely actions that prepared for when the tactical team would arrive at his cell. But when the tactical team arrived at his cell, in order to help him comply with that request, and so when a potential plan needed to be put into motion at that moment, Mr. Bell, instead of implementing or starting to perpetrate a plan, instead copped up with the tactical team's instructions with us going to another cell. Let's suppose a cellmate or the guy in the next cell over, they planned this. Would those be acts in furtherance of a conspiracy to create the map, the deceitfulness, and the dummy? Would those be acts in furtherance of a conspiracy? Even though we know that conspiracies don't have to occur. I mean, a conspiracy occurs, but that's the inchoate act, and the ultimate act doesn't need to be successful. There can still be a conspiracy. I'm not entirely sure about whether or not that would constitute a conspiracy. I just know here that the intent statute doesn't penalize any act taken with the specific intent to commit a crime. It specifically requires and only penalizes acts that are substantial steps taken with a specific intent. So it penalizes not thought alone or speech alone, but thoughts coupled not with insubstantial steps as occurred here, but thoughts coupled with substantial steps. So you have to view Mr. Bell's acts on a continuum from acts in preparation to acts that would ultimately achieve an escape from the Pontiac Correctional Center. And on that spectrum, this is still just preparation. He never came to the meetings to— If he got out of the cell, if he knocked both officers down, however many officers there were, and got out of the cell and went to the next locked door, would that be a substantial step? Because he's never going to get out. The likelihood of him getting out of prison with his plan is so de minimis that it's the worst plan I've ever heard of. But it is not necessary. Well, you're saying that it's not a step or a substantial step. Would you agree that it was a step? I would agree that it's a primitive act. But that's not a step? But it's not a substantial step. So if it's an act and a step and not a substantial step, then it would always be a substantial step. What authority do you have that supports the fact that anything like—I mean, this is pretty specific. The map, the refusal to appear, coupled with the dummy, I mean, that's pretty specific. The map is your honor. I'm not sure what the dummy would achieve in an escape attempt. Well, just because it's a bad idea doesn't mean— So in his mind, that was a step. As you say, that was preparation. Some might say it was a step, a substantial step. In your honor, I would just reiterate that the sole issue here isn't Isabel's intent, but would be— Yeah, I think it's more than—I agree with you, yes. Going back to your example of if he attacked the tactical team when they arrived and tried to evade them in order to leave his cell, that could be a substantial step. We don't even have that here. When the tactical team arrived and asked him to come up, he dropped out. I just want to clarify that. So we're back to abandonment. It sounds to me as though the argument is that once he has allowed himself to be cuffed up, the inquiry is over, and we can only look to his actions prior to that point, and potentially he gave up the plan. Yes, and—  That is the sum of my argument. Only my emphasis, then, is on his acts before that are minimal and don't satisfy the statute requiring acts that are purchased instead of preparation. So your argument would be, then, as Justice Connick suggested, the door would have to be open, he would take off running, and then when he got caught, as Justice Connick says, probably was pretty much inevitable. That alone would be an attempt escape. Is that basically a correct summary? Yes, and would that— And nothing short of that? Well, I would direct this Court to its decision, people be realists. I know that is a very clear example of an attempted escape, and in that case, it was decided in 19—I'm going to be up late. The realist defendant enticed the officers to enter his cell. He struck the officers. He then let his cell obtain access to the control room for the jail, caught the radio, captured additional officers, and then when he ceased his escape, that was when he was physically restrained. The Court found that that was sufficient, but it started its analysis with the fact that he successfully lured the officers into his cell and struck them. We don't even have that here. We don't have that first initial step. He did lure them to his cell. Lured to his cell, not— By his behavior. By opening the cell door. Right. Without him being caught out. And, Your Honors, even if this Court does reject Mr. Bell's point as to point one, he would at least argue that—at least ask you to consider whether or not those acts themselves constitute a substantial step as a close issue for the jurors to resolve in a closely balanced— An essential step? Excuse me. You used the word essential. Is that different than substantial? I meant substantial. Okay. I probably would not articulate it if I had all of those. And so, that'll do that. We transition to point two. In point two, Mr. Bell argues that the trial court failed to strictly comply with Rule 431B, and that's pursuant to this Court's decision in People v. Curry, which the State concedes that clearing of a curb is response-free. The State, nonetheless, argues that this problem is not applicable because Mr. Bell's guilt was overwhelming. And, as I mentioned before, I'd like this Court to consider, especially considering that reviewer courts have struggled with whether it constitutes a substantial step in the context of the statute, and considers it one of those troublesome problems about more criminal law, that the jurors like to struggle with this issue as well, that the acts of having a dummy jammed cuff to catch a map, whether those are substantial towards an actual escape, is a close issue. The other part of the closely balanced argument relies on the State's argument in closing that the case, it stated that ultimately the case really boils down to one issue, and that is credibility. So the State, in its own evaluation of its case, recognized that it boiled down to the jurors' evaluation of in-court testimony between competing witnesses and that there was a lack of independent verifying evidence. To that end, there was really no objective evidence of this purported escape attempt. It did not rely on the State's witnesses to verify its connection to Mr. Bell. For instance, the photograph of the dummy does not show that it's from Mr. Bell's cell. It's just a photograph of the dummy lying on the bed. But it relies on the credibility of the officers to establish that it was connected to Bell through their testimony. And that is the same thing with the map. There's nothing inherent about the map that ties it to Bell. And also to Mr. Bell's statement to Ms. Hernandez. What do you mean it doesn't tie it to Bell? It was found in his cell, wasn't it? Excuse me. What I mean is that it relies on the officers' testimony for that fact. Looking at the photograph of the map, there's nothing inherent about that that connects it to Bell. That it was found specifically in his cell, and he denied that he made it as well. Yeah, but he also confessed, didn't he? In an interview? He denied that he made that confession. It wasn't recorded. It was made approximately six weeks after this purported escape attempt. It wasn't in his handwriting. He signed it, didn't he? It was in Ms. Lopez's handwriting. I thought he'd signed it. He denied that he signed it. Ms. Lopez testified that he did it. There was no other examples of his handwriting in order to establish that that is his. It relied on her testimony that he signed it. There was also no testimonial evidence of the attempt to capture Mr. Bell's refusal to follow the officer's instructions. And I would argue that Mr. Bell's testimony itself wasn't implausible. In essence, he testified that he refused to comply with the officer's instructions in order to get attention, and specifically medical attention. And I think the most important fact agreed to by all parties was that when the time routine did arrive at his cell, he toughed up. You're indicating all this to show that the audience was closely bound. Yes, yes, sir. And we think the fact that he toughed up when the tactical team arrived evidences his narrative rather than Ms. Lopez's narrative, because he was actually trying to escape. And it doesn't make sense that he toughed up when the tactical team arrived. Well, we're back to abandonment. The idea that, I think your assertion is, let's just say that his confession was accurate, or that he didn't deny it, or the fact finder found that, yeah, you did make that confession. Your point still is on your first point, so what? What he thought, what he did. He had abandoned, then he had substantial stepped toward an attempt. He abandoned escape attempt before he committed a substantial step. And so I think for the close-knit balance argument that Mr. Bell's testimony is implausible, I just want to reiterate that he did tough up when the tactical team arrived. I think we understand that. I want you to go back to this credibility argument. I think you said a minute ago that the state conceded the case rested upon credibility. Is that something to that effect? Did you say that? Okay, let me follow up on that. Are you suggesting, then, if the case hinges upon the credibility of witnesses, that that automatically makes the evidence closely balanced? And if so, do you have a case that says that? Let's see. So, I did argue that the state essentially closing argument states that it is a credibility contest. Now, that alone doesn't make it a closely balanced case. It has to be between two competing narratives that aren't established by other objective evidence, one way or the other, or it's not an implausible story. Okay, well, if the state says it comes down to credibility, and you might not find the defendant's testimony credible because there was a dummy in his bed, he had a map of the prison and some kind of overview of the prison, and he confessed. So, now he comes into court, takes the stand, says none of this happened. Is that truly just based upon credibility, or are there lots of things for the prosecutor to say, he's not credible because of the pieces of evidence I just mentioned? Well, I do understand what you're saying, Your Honor, but I would still focus in on the fact that the state is directing the jurors specifically to their credibility and not to these purported objective pieces of evidence that they intend to escape. And there's a reason for that, because they also rely on credibility, the officer's credibility to have any meaning here. Well, as I understand your argument, there could be tons of evidence that disputes what the defendant says in any given case, but if the defendant takes a stand and denies it in spite of all that other evidence, it's a case of credibility. Is that a fair statement? Because if that's the case, every time the defendant pleads not guilty and takes a stand and says, I didn't do it, it would always just be a case of credibility, he said, she said. And I'd love to, you know, I try to make my argument more nuanced than that, and looking at the specific minimal piece of evidence here in this case, and how... I guess I also want to emphasize that it wasn't just the defendant's testimony. He also had witnesses to corroborate his story, and so it ended to become multiple witnesses on each side, each testifying to different set of facts that occurred, which I don't think would be a very good contrast. Regarding point three... Tell me how he was prejudiced. Point three. Your Honor, because he was shackled, Mr. Bell was precluded from moving around the courtroom like the prosecutor was able to do, and the jurors wouldn't be able to see that. If we see that Mr. Bell was tethered to his desk while the prosecutor could interact with others, the court, witnesses, if this would reinforce to the jurors the prosecutor's closing argument that Mr. Bell couldn't be trusted, and this is really important in a case where credibility was an essential issue. Does the record show that the judge said, we'll do everything from where you're seated? Yes, but then... The trial court did state that at the beginning of the trial on day one. Thereafter, the prosecutor would ask to approach witnesses, and the trial court would okay that. When Mr. Bell wanted to appear in an exhibit to a witness, he required Mr. Bell to have the intercession of the prosecutor, then take that to the witness. And so that procedure, that disparate procedure impacted how the jurors would view Mr. Bell, especially when he's physically constrained to his desk in an attempted escape case. I think that would have more meaning within the case. And also, this isn't a situation where Mr. Bell was represented by a defense counsel, and he just sat idly at his desk while being shackled. He represented himself. He was prosaic. And I would just say to people in Brooklyn Jail for the impact that shackling would have when somebody was trying to conduct their own defense, both in testifying, examining witnesses. Even the United States Supreme Court generally recognized that shackling would have such negative effects as imposing physical burdens, pains, restraints, but also mental burdens and mental faculties. So trying to organize your defense and shackle without a loose hearing would impact Mr. Bell in his attempts to raise his defense here. This may be a question. This is curiosity, but it could affect. And I don't know if the record would show it. I think this question has arisen before in my mind, but I've never had the chance to ask it. Can you tell from the record if they skirt the table, like you do in a banquet thing? And if they do, do they skirt both tables? Or are the counsel tables solid? You can answer that if you know. If you know. Yes, I understand that. I'm asking. And this would actually be to your benefit, but we may not know the answer. Are both attorneys' tables treated the same? Thank you. You'll have some time on rebuttal. May I please record, counsel, as to the shackling argument, the record is clear that it's shackled more physically to the jury. This is a plain error argument. I don't have any dispute, or I don't have any question about... But I do have some questions about... Well, since this is a county, and I don't even know what the number would be. If we had 20 booze cases, 19 of them have been from Livingston County. Part of that would be because they have a prison population that they have to deal with. But do you agree that the record shows that the prosecutor more freely moved about the courtroom? And I'm not saying he wandered all over. I'm just saying, does it appear that the defendant actually handed an exhibit to the prosecutor in order for that to be taken to the witness? I can't remember a specific point where the defendant actually presented an exhibit. I would accept not remembering, but do you dispute that the record... That was the procedure the trial court outlined. I don't know if the defendant took advantage of that procedure or not. Well, I would suggest that my reading of the record is that he did. Okay. What kind of impression would that make on the jury? A Livingston County jury that the odds are, and I know that I'm speculating here, that the people on the jury, they know they're trying to prison him. I mean that because it's an escape case. If one of them has ever been through jury duty and sat on a criminal case, they know that this guy is shackled. Now, that's speculation. But remove the speculation. How could a defendant, particularly one representing himself, be viewed in the same light as the prosecutor? I mean, he's constrained to his table, and the prosecutor moves about the courtroom. I don't think that... I mean, if it's just the example of an exhibit, the trial court stated that most of the time both parties are going to be seated. I don't think just the state taking an exhibit up to a witness is inherently prejudicial. When it's the defendant's exhibit? I mean, no, I don't see how that's... Given that it's an escape charge, and this guy's confined to his table, and there's security in the courtroom. The jury doesn't know that he's confined to his table. They would begin to think about it, wouldn't they? He's representing himself. Why shouldn't he, unless there has been a proper booze hearing, taking into account the things that you're supposed to take into account? And still that would only require three or four minutes. He's not being treated the same as counsel. I don't think that any authority was cited that says that that is inherently prejudicial, but... I didn't say it. I'm not asking if it's inherently prejudicial. I'm asking it considering the kind of charge it is, and considering the disparate treatment between prosecutor and defense. I don't think also the defendant doesn't get bonus points for being pro se. Well, what if his lawyer was told by the court, you have to sit at the desk, but I'm going to let the prosecutor move around. I don't think that this record doesn't say that. The record says that both parties, the state and the defendant... But we know from the record that the prosecutor wasn't limited to sitting down. Well, I guess at certain points, like you said, the exhibits or whatever, I don't remember those specific points in the record, but presumably if the defendant wasn't pro se, his own counsel would have taken the record up, or even the state. I still don't see how that makes any impression on the jury one way or the other. I'm sorry, taking up so much of your time on that. I would also argue, and I did argue and agree, that this was not merely forfeited. The defendant implicitly accepted the trial court procedure as to the shackling. He even agreed when the trial court asked, Will we be able to stand without the jury hearing the life shackles? And he says yes. He didn't merely just fail to object to this. He accepted the trial court's procedure. That's why plain error isn't available in situations of waiver such as this. Counsel, Justice Kinnick asked Mr. Whitry if he knew whether the skirt or whatever it was that hides the shackles was also on the prosecutor's table. In other words, if there's a skirt on the defense counsel's table where the defendant's sitting, but not on the prosecutor's table, that's going to be pretty easy for the jury to see what's going on. The record only states that the jury can't see his life shackles. Well, for future cases, because this may come up again, it would be interesting to know what they do in Livingston County. And I'm somewhat surprised that a defense attorney or a prosecuting attorney hasn't figured out yet that that could factor in. I know it doesn't matter in this case, but I'm assuming it would be serious. I said for future. Okay. Again, yeah, he says, we will remove your hand restraints, the leg shackles will still remain all right, but the jury will not be able to see that. Okay. Based on that, I mean, this is a plain error argument. It's the defendant's burden to show. The record shows. I'm assuming that both tables have covers on them. I think that should be the presumption. Why should that be the presumption? Well, it's the defendant's burden. I mean, we must presume that the trial court acted in accordance with the rules. Except that they didn't hold a booze hearing. Fair enough. Even close to a booze hearing. I would say, and I would submit that, I mean, he was on trial for attempted escape, so I would say that a booze hearing would show that shackles were, I mean, it doesn't matter in this case, I know, but a booze hearing presumably would have not resulted in a defendant's waiver. But as I stated, it was plain error. It wasn't plain error, and forfeiture isn't available anymore. Or plain error rule isn't available anyway because this was waivered, not merely forfeiture. As for the sufficiency of the evidence argument, there was not just sufficient evidence here. There was clearly overwhelming evidence. The defendant signed a confession that he intended to escape and attempted to escape. Defendant doesn't get to decide when the attempt starts or when. Do you acknowledge that, and this would actually accrue to the defendant, I suppose, we did go through a period of time where the test was dangerous proximity. A dangerous proximity to success? Yeah. That would go all the way back to, I think, Justice Holmes on the Supreme Court describing a murder charge where someone gets a gun and intends to murder somebody but he lives 15 miles away. That doesn't consider a waiver of proximity to success. Success here, again, the defendant also doesn't get bonus points for a terrible planned escape plan. Defendant confessed. And he went through the substantial steps he took. As far as abandonment goes, Justice Kavanaugh, the attempt here was already, this charge was already completed, I mean, we can at least say at the very least point when he hid in his cell from the guard that came to you. I would say that it happened as soon as he put the dummy in his bed, but he also remained silent during the count and then hid in his cell. And the only contraverting evidence is the defendant's own story, which is simply unbelievable. Well, refresh my recollection. Did one correctional officer come to his cell, see the dummy and said, get over here and cuff up, and nothing happened? Right. Then an officer came to the cell, lieutenant or something, and the same thing happened? Is that right? I think, and then the tactical team. Would it be your argument then that there was actually two attempts, when the first officer arrives and then when the second officer arrives? Of course. We have the benefit here of the defendant laying out his whole plan and then signing the confession. That's clearly not usual in these types of charges. The other law-abiding case the defendant mainly relies upon, that's the attempt to make him a terrorist, that his note was found face down in his locked car. If he said, yep, I bought these guns, I typed this note out, but I decided not to go through with it, then Ottawa might have a completely different decision on the heel. Does the charging instrument identify within specificity when the attempt occurred? For example, I just posed to you, first officer comes there, says cuff up, silence, attempt. Second officer comes there, says cuff up, silence. Two attempts. But is the charge the third time where the tactical team comes in and says cuff up, then he acquiesces? How is it charged? Because there might be a distinction between those three different things. I think it was the statutory language and the date. I don't think it goes into the specifics of the substantial steps he took. Okay. Well, then let's go back to what I'm trying to get to here. Would the third time when the tactical team gets there and they say cuff up and he does that, would that still be a completed attempt escape? What I'm saying, is that different than what happened the first two times a correctional officer came to the cell door? I think the escape was already, I mean, because we have this plan from defendant's side, I mean, it goes through the steps that he took and his attempt to escape. All right, let me try again. Okay. Forget the first two correctional officers. Okay. My hypothetical now is the tactical team, for whatever reason, shows up first at the cell, says cuff up and he does. Do we have an attempt? And the confession is still the same? Everything else is the same. Okay. He made the dummy, he jammed the plastic in the hatch, he made the map. This evidence is overwhelming. Defendant's story was simply unbelievable. The main, I mean, if we want to look at the record, defendant's story was somehow this would be the easiest way to get medical attention. That, of course, begs the question of when the tactical team actually does arrive, why don't they ask him for medical attention? He doesn't. He just puts his handcuffs on. Clearly this was an outlandish defense. Does he offer any explanation why the blueprint or the aerial of the prison would have anything to do with receiving medical attention? You mean his map? Yeah, the map. I think he denied making the map. Oh, okay. But the point is that just because there's that. In his confession, he denied making the map? Yeah. Oh, no, no, no. I think the confession laid out all of the steps that he did. Okay, well, I know he ultimately denies the whole thing, but was that in the confession, the part about the map? And I thought there was a map of the prison and some kind of aerial map of the prison as well. I think he mentions the map, the dummy, the plastic, everything in his confession. Okay. But, again, he's denying signing that confession. The point is that just because someone says all these state's witnesses are lying, that doesn't mean it's a closely balanced case. This is a credibility contest only in the sense that the whole theory was that every state witness was lying consistently with each other. That doesn't make it a closely balanced test as far as the evidence here. The evidence is overwhelming. Therefore, plain error isn't available for the 431B argument. The state has conceded that the trial court didn't say the magic word in the right order in this case for 431B. But strict compliance, even when the trial court doesn't strictly comply, in the face of overwhelming evidence, this doesn't amount to plain error. Something in the record that indicates the jury actually was biased. There's nothing in the record that indicates the jury was biased here. And this was a credibility contest only in the sense that the jury had to realize that this ridiculous story that the defendant came up with was ridiculous and the state's overwhelming evidence was credible. If there are no more questions, I would ask this court to affirm besides the MSR error in argument 5. Thank you. You're welcome. Your Honor, something to clarify just a few words on the Bruce issue. It was during Ms. Lokman's testimony when Mr. Bell wanted to hand an exhibit to her and he was required to use the prosecutor to complete that process. And this could have been easily fixed by the trial court requiring both parties to remain at their tables and handing exhibits to the bailiff to tend to witnesses or to the court. Was that an isolated incident that happened only one time during the trial? Yeah, the first time he asked, the only time he asked to present that piece of evidence, that was the procedure the trial court implemented. But there was also the issue of the state's witnesses were allowed to approach and be sworn in, whereas the defense witnesses and Mr. Bell himself, which magically appear in the witness box. And so that also represented a disparate treatment between the state's witnesses and Mr. Bell's witnesses when it's a competition on which side the jury would believe. Regarding the waiver and acquiescence... Wait, wait a minute. Does that mean the witnesses were shackled? Mr. Bell's witnesses were shackled, yes. But the jury didn't see it or did see it? The jury didn't see it. They would recess the... Oh, yes, yes. And that was your reference of the magically appear in the witness box. I apologize, Your Honor. Yes. Regarding the waiver and acquiescence argument, the state's argument mars any distinction between affirmative action, affirmative acquiescence, and a failure to object. The trial court... Excuse me. Mr. Bell didn't make any statement regarding Rule 430 or regarding the shackles that first day. He was completely silent on the issue. The only thing he answered was a factual question from the trial court. And his answer was only responsive to that question of whether or not the jurors would be able to hear him as he stood. And so to somehow extrapolate from that that he consented to be shackled not only ignores the principle that waiver principles should be construed with only Mr. Bell's favor, but it really makes no distinction between failing to object and actually affirmatively stating no objection or affirmatively indicating acceptance of the shackles. Well, that means you're treating him... you are giving him a couple bonus points for being pro se. Because it's a way of saying he doesn't know when he can speak up. He doesn't know that he should object then. And yet, if he was represented by counsel, would we be looking at it differently? I would argue no. I would argue that even if defense counsel is silent during the trial court's order, then it's still merely failing to object to the order. And that's not affirmatively stating that they're accepting the procedure or that they're acquiescing to that. Isn't it compliance with an order already made to stand up without letting the seeker out of the bag that he's shackled and can be heard? So the defendant is simply... the way I view it, the defendant is not speaking to Rule 430. He's complying with the court's direction to stand up. And can you do that without the jurors hearing you? He's only responding to the trial court's question on that issue. If there are no other questions before this time? We do not. Thank you. I'll take the matter under advisement. Let me suggest that the questions that I've asked were not meant to denigrate either position. They were rather... I think this is an interesting case, and it's somewhat problematic that we continue to see Booth's questions arise.